UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

ARTHUR WEILER, JR.,                  :
                                     :
          Plaintiff                  :    No. 4:CV-05-2433
                                     :
     vs.                             :    (Complaint filed 11/22/05)
                                     :
R & T MECHANICAL, INC.,              :    (Judge Muir)
                                     :
          Defendant                  :

ORDER

October 25, 2006

THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:

On November 22, 2005, Plaintiff Arthur Weiler, Jr.,
initiated this action by filing a one-count complaint.  At all
relevant times Weiler had been employed by Defendant R & T
Mechanical, Inc.  In his complaint Weiler alleges that his
employment with R & T Mechanical, Inc.,

> was terminated as a result of his opposition to sexual
> harassment in the work place and his assistance to a female
> co-worker in pursuing her complaint of sexual harassment.
> Therefore, his termination was in violation of both the
> Federal Civil Rights Act and the Pennsylvania Human
> Relations Act.

(Complaint, p. 4, ¶29)

On September 8, 2006, R & T Mechanical, Inc., filed a motion
for summary judgment.  A supporting brief, statement of
undisputed material facts, and exhibits were filed with the
motion.  Weiler filed his opposing brief, counter-statement of
facts, and exhibits on September 26, 2006.   Although the brief

was filed one day late, we will accept it as having been timely
filed.  R & T Mechanical, Inc., filed its reply brief on October
11, 2006, thereby ripening its summary judgment motion for
disposition.

Summary judgment is appropriate only when there is no
genuine issue of material fact which is unresolved and the moving
party is entitled to a judgment as a matter of law. Fed. R. Civ.
P. 56©.  Summary judgment should not be granted when there is a
disagreement about the material facts or the proper inferences
which a fact-finder could draw from them. Peterson v. Lehigh
Valley Dist. Council, 676 F.2d 81, 84 (3d Cir. 1982).  "When a
motion for summary judgment is made and supported as provided in
...[Rule 56], an adverse party may not rest upon mere allegations
or denials of the adverse party's pleading...."  Fed. R. Civ. P.
56(e).

Initially, the moving party has a burden of demonstrating
the absence of a genuine issue of material fact. Celotex
Corporation v. Catrett, 477 U.S. 317, 323 (1986).  This may be
met by the moving party pointing out to the court that there is
an absence of evidence to support an essential element as to
which the non-moving party will bear the burden of proof at
trial. Id. at 325.

Rule 56 provides that, where such a motion is made and
properly supported, the adverse party must show by affidavits,

2

pleadings, depositions, answers to interrogatories, and admissions on file that there is a genuine issue for trial. Fed. R. Civ. P. 56(e).  The United States Supreme Court has commented that this requirement is tantamount to the non-moving party making a sufficient showing as to the essential elements of its case that a reasonable jury could find in its favor. Celotex Corporation vs. Catrett, 477 U.S. 317, 322-23 (1986).

Because summary judgment is a severe remedy, the Court should resolve any doubt about the existence of genuine issues of fact against the moving party. Ness vs. Marshall, 660 F.2d 517, 519 (3d Cir. 1981).

The United States Supreme Court has stated that in motions for summary judgment a material fact is one which might affect the outcome of the suit under relevant substantive law.  See Anderson vs. Liberty Lobby, Inc., 477 U.S. 242 (1986).  The Supreme Court also stated in Anderson that a dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Id. at 248.  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Electric Industrial Company, Ltd. vs. Zenith Radio Corporation, 475 U.S. 574, 587 (1986).

The Court of Appeals for the Third Circuit has commented that "this standard is applied with 'added rigor in employment discrimination cases, where intent and credibility are crucial issues.'" Hankins vs. City of Philadelphia, 189 F.3d 353, 363 (3d Cir. 1999)(quoting Robinson vs. Vs. PPG Indus., Inc., 23 F.3d 1159, 1162 (7th Cir. 1994)).  We are also mindful of the comment of the Court of Appeals for the Third Circuit that

> [a] play cannot be understood on the basis of some of its scenes but only on its entire performance, and similarly, a discrimination analysis must concentrate not on individual incidents, but on the overall scenario.

Abramson v. William Patterson College of New Jersey, No. 00-5026, 2001 WL 881255, *9 (3d Cir. August 3, 2001)(quoting Andrews v. City of Philadelphia, 895 F.2d 1469, 1484 (3d Cir. 1990).  We will apply those principles to the pending summary judgment motion.

In considering the motion's merits, we rely upon the following undisputed facts to decide whether any reasonable finder of fact, based upon the evidence of record, could find in favor of Weiler on his retaliation claim.

R & T Mechanical, Inc., was formed and began operations in 1987.  The corporation is an industrial contractor which specializes in pipe-fitting, millwright work, rigging, metal fabrication, crane rentals, and industrial concrete.  Timothy Baughman is the owner and president of R & T Mechanical, Inc.

In 1988 or 1989, R & T Mechanical, Inc., hired Robert Savidge as an Installation Foreman.  Savidge and Baughman were personal friends.  Savidge eventually became general manager of R & T Mechanical, Inc.'s, north division which was headquartered in Tioga Junction, Pennsylvania.  Savidge's duties included the hiring and firing of R & T Mechanical, Inc.'s, north division employees.  Savidge's only supervisor at R & T Mechanical, Inc., was Baughman.

On February 5, 1997, Savidge hired Weiler as an employee at R & T Mechanical, Inc.'s, north division.  In 2001 Weiler became a General Supervisor at the corporation's office in Lawrenceville, Pennsylvania.  Savidge was Weiler's immediate supervisor.  In Savidge's absence Weiler was in charge.  Two of R & T Mechanical, Inc.'s, female employees in that office were Kimberly Lauterborn and Judy Hitman.  Lauterborn's husband was also employed by R & T Mechanical, Inc., at that location.

In 2002 Lauterborn informed Weiler that she was being sexually harassed by Savidge.  Weiler advised Lauterborn to inform Baughman of Savidge's inappropriate conduct.  Lauterborn did not do that, and she asked Weiler not to inform Baughman of Savidge's conduct, because she was afraid that 1) Baughman would side with Savidge, and 2) both Lauterborn and her husband would lose their jobs as a result of the allegations.

Savidge's inappropriate behavior continued.  In the summer
of 2003, Weiler and Lauterborn confronted Savidge about the
problem.  Savidge admitted that he behaved inappropriately.
Despite his statement that he would no longer harass Lauterborn
Savidge continued to make inappropriate statements to Lauterborn.

One of Weiler's job responsibilities at R & T Mechanical,
Inc., was the preparation of bids for jobs.  In January of 2004,
Weiler prepared a bid for a job in Tyler, Texas, which was
accepted.  R & T Mechanical, Inc., lost $10,000 on the Tyler,
Texas, job.  Shortly after that job Weiler met with Baughman to
discuss the manner in which bids should be prepared.  In February
of 2004, Weiler prepared a bid for a job in Alabama, which was
accepted.

In or around the spring of 2004, a female R & T Mechanical,
Inc., employee, Judy Hitman, fabricated and displayed at work a
sexually suggestive photograph of Weiler.  The photograph implied
that Weiler was gay.  Weiler and his wife were offended by the
photograph.

In retaliation Weiler's wife fabricated a photograph of
Hitman coming out from under Savidge's desk which Weiler brought
into work and showed to Hitman.  Weiler admitted that there was a
sexual connotation to the photograph his wife prepared, and he
saw nothing wrong with presenting it to Hitman even though he was

her supervisor.  Weiler believed that as a supervisor it was
appropriate for him to threaten Hitman.

In addition to Savidge's harassment of Lauterborn, Weiler
knew that Savidge was offering Hitman money if she would have sex
with him.  Weiler and Savidge were also aware that another R & T
Mechanical, Inc., employee, Larry Kroeck, was engaging in
inappropriate behavior.  Kroeck would allow female employees of
another company known as ACP to have an R & T Mechanical, Inc.,
t-shirt only if the female would have sex with Kroeck.  When
Weiler wanted to give a shirt to a female ACP employee, Savidge
would not let him do so.

The Alabama job began in May of 2004.  Weiler was initially
in charge of that job as the sole supervisor at the job site in
Alabama.  After he injured his arm, Weiler's job responsibilities
at the Alabama site changed.  Subsequent to those events, Weiler
shared responsibilities for the job with another R & T
Mechanical, Inc., employee, Greg Nagy.  At that point Weiler
assumed he and Nagy had equal authority on the Alabama job site.

Nagy supervised the day shift and Weiler supervised the
night shift at the Alabama job.  There was little communication
and no interaction between the day and night crews.  Weiler's
work crew consisted of Lauterborn, Weiler's son, and one other
worker who was hired in Alabama strictly for that job.  The
Alabama job was not completed in one trip.  R & T Mechanical,

7

Inc.'s, employees made at least two trips to Alabama to complete the job.

Weiler and Hitman had previously discussed with Baughman the incident concerning the fabricated photographs depicting Weiler and Hitman.  Baughman intended to address the situation with Weiler during one of Baughman's scheduled trips to the Alabama job site in June of 2004.

Weiler first reported Savidge's behavior with respect to Lauterborn to a member of R & T Mechanical, Inc.'s, management in June of 2004.  Weiler reported that conduct to Baughman when Lauterborn and Weiler were in Pennsylvania and on a break from the Alabama job.  Upon receiving the report, Baughman seemed displeased with Weiler.  On the same day that Weiler raised the matter regarding Savidge's harassment of Lauterborn, Baughman met with Lauterborn and Weiler.  At that point Lauterborn presented all of her allegations concerning Savidge to Baughman.  Baughman then met with Savidge.  When Savidge admitted that Lauterborn's allegations were true, Baughman immediately terminated Savidge's employment based on the complaints of Lauterborn and Hitman.

Weiler was not demoted because he reported Savidge's sexual harassment to Baughman.  Weiler's job title, salary, and duties did not change as a result of that report.

Prior to the termination of Savidge's employment, Weiler, Baughman, and Savidge discussed what would happen after Savidge

retired.  Those discussions led Weiler to believe that he would replace Savidge as the general manager.  However, Weiler did not expect to be appointed to that position if he performed poorly.

Baughman issued to Weiler a written warning in a letter dated June 17, 2004, for the manner in which Weiler handled the alleged sexual harassment of Hitman and Lauterborn.  Weiler had not reported Savidge's inappropriate behavior earlier because he though it was the victim's responsibility to report such behavior.  After Weiler received Baughman's letter, Weiler understood that he was expected to report sexual harassment problems to Baughman.

Approximately three weeks after Weiler received Baughman's June 17, 2004, letter, Weiler telephoned Baughman to inform him of the sexually inappropriate behavior of Larry Kroeck at ACP. During that conversation Baughman became irate, asked Weiler if Weiler wanted everyone fired, and he cut off Weiler.

On Wednesday, July 14, 2004, Lauterborn and Weiler were working at the Alabama job site.  On that date Lauterborn told Weiler that she needed to return to Pennsylvania because she had to take care of her minor son who she stated was home alone.

Lauterborn telephoned Baughman and requested permission to return to Pennsylvania.  Baughman informed Lauterborn that she could return to Pennsylvania if both Weiler and Nagy allowed her to do so, but that there might not be work for her in

9

Pennsylvania.  Although Weiler was aware of Baughman's instructions to Lauterborn, he told Lauterborn not to raise the subject with Nagy because Weiler knew that Nagy had been making negative comments about Lauterborn.  Some of Nagy's comments had sexual connotations relating to Lauterborn.

Weiler agreed to let Lauterborn return to Pennsylvania. When he did so he was not aware of any sexual harassment at the Alabama job site directed towards Lauterborn.

Weiler sent Lauterborn home on Friday, July 16, 2004.  No R & T Mechanical, Inc., employee subjected Lauterborn to sexual harassment or gender discrimination when she worked on the Alabama job.

On the morning of Saturday, July 17, 2004, Weiler went to the job site for approximately two hours.  During that period he talked to Nagy and they got into an argument about Lauterborn. Later that day when Weiler was preparing to return to the job site he began experiencing chest pains and anxiety.  Weiler went to the hospital.  Weiler received a morphine drip and stayed at the hospital for approximately 5 hours.  Medical personnel at the hospital in Alabama instructed him to seek medical attention from his physician in Pennsylvania within 2 days.  However, when he was discharged from the hospital, Weiler intended to return to work the following day.

Although Baughman had previously given his cell phone number to Weiler, Weiler did not have the number with him in Alabama. While he was in Alabama, Weiler had no way to contact Baughman during a weekend.

On the morning of Sunday, July 18, 2004, Weiler thought of his argument with Nagy on the preceding day which caused him to experience difficulty breathing.  At that time Weiler decided to return to Pennsylvania to seek medical advice.  Weiler met with Nagy on the job site and Weiler informed Nagy that Weiler would be returning to Pennsylvania because of his medical condition. Weiler also told Nagy that Weiler would contact Baughman by telephone on Monday morning.

Before he left the job site on Sunday, July 18, 2004, Weiler also met with another worker on the site, Ron Ramer.  Weiler told Ramer that Weiler was leaving the job because "the project was causing him too much stress and that he was unable to get a handle on the job." (Weiler Deposition Exhibit 6)

Before he left Alabama, Weiler unilaterally dismantled his crew of night shift workers.  Lauterborn had already been sent home, Weiler's son was returning to Pennsylvania with Weiler, and Weiler fired the employee who had been hired in Alabama.  Weiler did not inform Baughman of those actions before taking them.

On Monday, July 19, 2004, Weiler called Baughman to inform Baughman that he had left the job site in Alabama.  During that

conversation Baughman immediately terminated Weiler's employment for leaving the job site.

R & T Mechanical, Inc.'s, employee handbook contains a rule prohibiting employees from being absent more than one day without authorization.  The handbook provides that violating the rule was grounds for immediate discharge.

R & T Mechanical, Inc., ultimately lost approximately $101,000 on the Alabama job.  Weiler admits that he was partially responsible for that loss.  Weiler asserts that other employees of the corporation, including those who reviewed the bid documents which he prepared, are also responsible.

Weiler received a termination letter dated July 19, 2004, in which Baughman stated that Weiler's employment was terminated for extreme and unacceptable losses, lack of communications and coordination, and sexual misconduct.

R & T Mechanical, Inc., did not hire anyone to replace Weiler.  Instead, Baughman assumed Weiler's job duties.

We will apply those facts to the pending summary judgment motion.  As noted above, Weiler's sole claim is that R & T Mechanical, Inc., unlawfully retaliated against him because he opposed sexual harassment in the work place and assisted Kimberly Lauterborn in asserting her allegations of sexual harassment.

The Court of Appeals for the Third Circuit has stated the following in the context of considering whether summary judgment should be granted on such a claim:

> Under our precedent, to advance a prima facie case of retaliation, a plaintiff must show that: (1) the employee engaged in a protected employee activity; (2) the employer took an adverse employment action after or contemporaneous with the employee's protected activity; and (3) a causal link exists between the employee's protected activity and the employer's adverse action. *See, e.g., Kachmar v. Sungard Data Systems, Inc.*, 109 F.3d 173, 177 (3d Cir.1997); *Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir.1989); *see also Krouse v. American Sterilizer Company*, 126 F.3d 494, 500 (3d Cir.1997)(describing the third requirement as a "causal connection").

*Farrell v. Planters Lifesavers, Co.*, 206 F.3d 271, 279 (3d Cir. 2000).

R & T Mechanical, Inc., initially contends that Weiler has failed to establish a causal link between his reports of sexual harassment and any adverse action by R & T Mechanical, Inc., such as the termination of his employment.  The adverse actions alleged by Weiler include other alleged repercussions from reporting instances of sexual harassment, such as the failure to promote Weiler after Savidge's employment had been terminated. In considering this argument we pause to note specifically what constitutes an "adverse employment action."  The Court of Appeals for the Third Circuit has held that

> [r]etaliatory conduct other than discharge or refusal to rehire is thus proscribed by Title VII only if it alters the employee's "compensation, terms, conditions, or privileges of employment," deprives him or her of "employment

opportunities," or "adversely affect[s] his [or her] status as an employee."

Robinson v. City of Pittsburgh, 120 F.3d 1286, 1300 (3d Cir. 1997).

We initially consider all of the alleged actions taken by R & T Mechanical, Inc., before the termination of Weiler's employment.  Based on the allegations in the complaint, the relevant circumstances relate to the alleged changes in Weiler's role at the corporation after Savidge's employment was terminated.

Weiler does not clearly identify the changes in his employment which constitute "adverse employment actions." Nonetheless, it is undisputed that Weiler's job title, responsibilities, and pay remained the same at all relevant times (including after Savidge left the corporation).  The informal discussions relating to Weiler's ascendence into Savidge's position never developed beyond general expectations, and Weiler concedes that such a promotion was always subject to his continued satisfactory job performance.  Specifically with respect to the change in Weiler's status as the lone supervisor at the Alabama job site, at one point in his deposition he concedes that his arm injury was the reason for the decision that responsibilities at the site would be shared with Nagy.

The only evidence of record Weiler cites in support of his contention that a sufficient causal link exists relates to the

14

various protests made by Baughman when Weiler brought an instance of sexual harassment to Baughman's attention.  However, none of that evidence establishes, or even relates to, an adverse employment action (i.e., an alteration in Weiler's compensation, terms, conditions, or privileges of employment; a deprivation of employment opportunities; or an adverse affect on Weiler's status as an employee). *See* Robinson v. City of Pittsburgh, 120 F.3d 1286, 1300 (3d Cir. 1997).  Despite the fact that Baughman may have yelled at Weiler, or cut him off in a conversation, there is no evidence connecting Baughman's reactions to some employment action adverse to Weiler.

Weiler also relies heavily upon the temporal proximity of his reports to Baughman concerning sexual harassment and the termination of his employment.  The Court of Appeals for the Third Circuit has held that timing alone is not enough to establish a causal connection. Robinson v. City of Pittsburgh, 120 F.3d 1286, 1302 (3d Cir. 1997).

Based on the undisputed material facts supported by the evidence of record, we are of the view that no reasonable finder of fact could conclude that a causal connection exists between Weiler's reports of sexual harassment to Baughman and some employment action adverse to Weiler, including the termination of his employment at R & T Mechanical, Inc.

While that conclusion in and of itself is a sufficient basis to grant R & T Mechanical, Inc.'s, motion for summary judgment, there is another reason for such a ruling.

If we assume for the purposes of this order that Weiler has established a prima facie case, the next step to consider is whether R & T Mechanical, Inc.'s, proffered reasons for taking the adverse employment action were merely a pretext and that the alleged retaliatory animus actually played a determinative or at least a motivating role in its decision-making process. Shellenberger v. Summit Bancorp, Inc., 318 F.3d 183 (3d Cir.2003).

The letter dated July 19, 2004, sets forth four grounds for the termination of Weiler's employment at R & T Mechanical, Inc. Those reasons are 1) "performance recently regarding numerous projects," 2) "showing extreme and unacceptable losses," 3) "lack of communications and co-ordination on projects," and 4) an "allegation of sexual misconduct regarding photographs taken at our Northern Office, ...."  Weiler contends that they are pretexts simply because they were not mentioned during the phone call on July 19, 2004.

> To meet his burden at this point, a plaintiff is required to demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them unworthy of credence.

Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir.1994) (citation and quotation omitted).

The only reason asserted by Baughman during that telephone call on July 19, 2004, was the fact that Weiler left the job site in Alabama. However, Weiler cites no authority in support of the proposition that an employer is required to provide each and every reason for an adverse employment action immediately when the action is taken.

Although most of the reasons referenced in the letter were not discussed by Baughman and Weiler on July 19, 2004, there is evidence in the record indicating that each of those cited reasons is valid. Weiler's failure properly to bid the Texas and Alabama jobs caused substantial losses to the company. Weiler's bidding practices could be fairly described as poor job performance. His failure to be able to contact Baughman on the weekends while in Alabama demonstrates a lack of communication. Weiler's dismantling of the night crew in Alabama and the admitted failure to communicate with the day shift demonstrates a lack of coordination. The situation concerning the fabricated photographs of Hitman and Weiler, as of the date of the termination of Weiler's employment, remained an open issue which Baughman had intended to address with Weiler on a trip to Alabama. Weiler has not demonstrated any sufficient defect in

17

those reasons which would allow a factfinder to discount them as pretexts.

We will grant the Defendant's motion for summary judgment.

NOW, THEREFORE, IT IS ORDERED THAT:

1.   The motion (Document 47) for summary judgment filed by R & T Mechanical, Inc., is granted.

2.   The Clerk of Court shall enter a judgment in favor of R & T Mechanical, Inc.

3.   The Clerk of Court shall close this file.


s/Malcolm Muir
MUIR, U.S. District Judge


MM:gja